THE HONORABLE ROBERT J. BRYAN

1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7  HANA ETCHEVERRY, Individually and On
Behalf of All Others Similarly Situated,

8         Plaintiff,

9         v.

10  FRANCISCAN HEALTH SYSTEM D/B/A
CHI FRANCISCAN HEALTH,

11  FRANCISCAN MEDICAL GROUP,
FRANCISCAN HEALTH VENTURES,

12  HARRISON MEDICAL CENTER, and
HARRISON MEDICAL CENTER

13  FOUNDATION.

14

15         Defendants.

Case No.  3:19-cv-05261-RJB-MAT

**PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS AND
COLLECTIVE SETTLEMENT**

NOTED FOR HEARING: October 19, 2021

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................3

III.   PROCEDURAL HISTORY.....................................................................................4

IV.    NOTICE OF SETTLEMENT, RESPONSE OF CLASS MEMBERS, AND
       OPT-IN PROCESS .................................................................................................5

V.     TERMS OF THE SETTLEMENT ..........................................................................6

       A.     Basic Terms and Value of the Settlement.....................................................6

       B.     Class and Collective Definitions...................................................................9

       C.     Allocation and Awards .................................................................................9

       D.     Scope of Release and Final Judgment ........................................................10

VI.    ARGUMENT ........................................................................................................11

       A.     Ninth Circuit Precedent Favors and Encourages Class Settlements............11

       B.     The Best Practicable Notice Was Provided to the Class Members ..............13

       C.     The Settlement Readily Warrants Final Approval.......................................14

              1.     The Settlement is entitled to a presumption of fairness  because it is
                     the product of informed, non-collusive, and arm's-length negotiations ..........14

              2.     The Class Members overwhelmingly support the Settlement..........................15

              3.     The strengths of Plaintiff's case ....................................................................15

              4.     The Action involves significant risk  and the possibility of extensive
                     further litigation............................................................................................16

              5.     The amount of the settlement favors approval ................................................17

              6.     Wide-ranging formal and informal discovery has been completed..................18

              7.     Class Counsel are highly experienced .............................................................19

       D.     The Class Representative Service Payment and Requested  Attorneys'
              Fees and Costs are Reasonable ...................................................................19

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page ii

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

E.   The Court Should Finally Certify the Class.................................................................20

1.   The Class is numerous and ascertainable .........................................................20

2.   Plaintiff's claims raise common issues of fact and law.....................................20

3.   Plaintiff's claims are typical of the claims of the Class ...................................21

4.   Plaintiff and Class Counsel will adequately represent the Class.......................22

5.   The Rule 23(b)(3) requirements for class certification are also met................22

VII.   THE COURT SHOULD APPROVE THE PROPOSED SCHEDULE...............................23

VIII.   CONCLUSION.........................................................................................................24

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page iii

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

# TABLE OF AUTHORITIES

**Cases**

*Amaraut v. Sprint/United Mgmt. Co.*,
    No. 19-cv-411-WQH-AHG, 2021 WL 3419232, 2021 U.S. Dist. LEXIS 147176
    (S.D. Cal. Aug. 5, 2021) ......................................................................................................... 12

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................................ 23

*Balderas v. Massage Envy Franchising, LLP*,
    2014 WL 3610945 (N.D. Cal. July 21, 2014) ........................................................................ 18

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................................ 18

*Carter v. Anderson Merchandisers, LP*,
    No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .................. 19

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .................................................................................................. 14

*Cody v. Hillard*,
    88 F.Supp.2d 1049 (D.S.D. 2000) .......................................................................................... 15

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
    No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) .................................. 11

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ............................................................................................... 12

*Fry v. Hayt, Hayt & Landau*,
    198 F.R.D. 461 (E.D. Pa. 2000) ................................................................................. 20, 21, 22

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) .................................................................................................. 13

*Guilbaud v. Sprint Nextel Corp.*,
    No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) .............................. 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 11

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988) ........................................................................................... 20

*In re Am. Bank Note Holographics, Inc.*,
    127 F.Supp.2d 418 (S.D.N.Y. 2001) ..................................................................................... 15

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,
    289 F.R.D. 526 (N.D. Cal. 2012) .......................................................................................... 16

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page iv

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir.2000) ............................................................................... 17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................ 14

*Jones, et al. v. CertifiedSafety, Inc.*,
    Case No. 3:17-cv-02229-EMC (N.D. Cal. June 1, 2020) ...................................... 12

*Kilbourne v. Coca-Cola Co.*,
    No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015) ........................ 16

*Langford v. Devitt*,
    127 F.R.D. 41 (S.D.N.Y. 1989) .......................................................................... 13

*Lewis v. Starbucks Corp.*,
    No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ................. 18

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) .......................................................................... 12

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................... 18

*Mandujano v. Basic Vegetable Products, Inc.*,
    541 F.2d 832 (9th Cir. 1976) ....................................................................... 13, 15

*Monterrubio v. Best Buy Stores*, L.P.,
    291 F.R.D. 443 (E.D. Cal. 2013) ........................................................................ 18

*O'Connor v. Uber Techs., Inc.*,
    No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 (N.D. Cal. Sep. 13, 2019) ........... 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................... 12, 14, 19

*Otey v. CrowdFlower, Inc.*,
    No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ...................... 11, 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................. 17

*Romero v. Producers Dairy Foods, Inc.*,
    235 F.R.D. 474 (E.D. Cal. 2006) ........................................................................ 20

*Soto, et al. v. O.C. Communications, Inc., et al.*,
    Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019) ...................................... 12

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 WL 3776765 (N.D. Cal. June 17, 2015) ....................................................... 18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .............................................................................. 13

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page v

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

*Viceral v. Mistras Grp., Inc.*,
  No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) ............. 12

*Viceral v. Mistras Grp., Inc.*,
  Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................ 18

*Villafan v. Broadspectrum Downstream Servs.*,
  No. 18-cv-06741-LB, 2020 U.S. Dist. LEXIS 218152 (N.D. Cal. Nov. 20, 2020)............... 16

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) .................................................................................. 21, 22

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................... 14

*York v. Starbucks Corp.*,
  No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) .................. 16

**Statutes**

29 U.S.C. § 201 ........................................................................................................... 1

29 U.S.C. § 216 ........................................................................................................... 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. passim

**Treatises**

Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992) ........................................ 24

Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) .............................. 22

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page vi

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

## I.   INTRODUCTION

Plaintiff Hana Etcheverry ("Plaintiff") hereby moves for final approval of the Class and Collective Action Settlement Agreement (the "Settlement Agreement" or "Settlement," ECF 70-1). The Settlement resolves all of the claims in this action on a class and collective basis. As such, Plaintiff moves for an Order[1]:

(1)   Granting final approval of the Settlement Agreement;

(2)   Finally certifying the Class for settlement purposes;

(3)   Finally appointing and approving Plaintiff Etcheverry as Class Representative;

(4)   Finally appointing and approving Schneider Wallace Cottrell Konecky LLP and Terrell Marshall Law Group PLLC as Counsel for the Class and Opt-In Plaintiffs;

(5)   Finally approving payment to Settlement Services, Inc. ("SSI") in the amount of $72,650 for its services as Settlement Administrator; and

(6)   Finally approving the implementation schedule, below.

Plaintiff brings this class and collective action (the "Action") on behalf of herself and current and former non-exempt workers with direct patient care responsibilities, including Registered Nurses, Licensed Practical Nurses, Certified Nursing Assistants, and others similarly situated, who worked for a medical facility in Washington operated by Defendants Franciscan Health System d/b/a CHI Franciscan Health, Franciscan Medical Group, Franciscan Health Ventures, Harrison Medical Center, and Harrison Medical Center Foundation ("Defendants" or "CHI Franciscan"). The Class and Collective encompass such individuals who were subjected to a 30-minute automatically deducted meal period from April 9, 2015 through June 16, 2021 (for the Washington

---

[1] Plaintiff brings this Motion under Rule 23(e) and the long-established precedent requiring Court approval for Fair Labor Standards Act ("FLSA") settlements. The Motion is based on the following Memorandum of Points and Authorities, the Declaration of Carolyn Cottrell, the Declaration of Beth E. Terrell, and all other records, pleadings, and papers on file in the action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a proposed Final Approval Order and Judgment with the moving papers.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 1

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

state law Class), and from April 9, 2016 through June 16, 2021 (for the FLSA Collective).[2] The Action is based on Defendants' alleged violations of Washington and federal labor laws.

The Court granted preliminary approval of the $5,500,000 non-reversionary Settlement on June 16, 2021. The Settlement resolves the claims of approximately 8,005 Class Members and approximately 1,275 Opt-In Plaintiffs.[3] Overall, the average net recovery is approximately $432.42 per Participating Class Member and each Opt-In Plaintiff will receive an additional $87.43, on average.[4] The Class Member with the largest award will receive an impressive $1,981.27, comprised of a Class share of $1,721.09 and an FLSA share of $260.18. With these considerable awards, the response of the Class Members has been resoundingly favorable—to date, no Class Members have objected to the Settlement, and just two individuals out of more than 8,000 have opted out.[5]

Given the excellent recoveries, the positive response of the Class, and that the Settlement will provide significant monetary payments in uncertain times, Class Counsel respectfully submits that the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and Opt-In Plaintiffs and an efficient outcome in the face of expanding

---

[2] Excluding the time period covered by any previous settlement involving the Class including, but not limited to, a settlement with St. Joseph Medical Center which applied to registered nurses through November 30, 2016.

[3] The Notice approved by the Court and circulated to the Class and Collective invited those who worked during the FLSA Collective Period to submit an FLSA Collective Consent Form to become Opt-In Plaintiffs and receive a share of the FLSA Net Settlement – 1,275 individuals have done so as of the date of this Motion. Class Members, who do not request exclusion and are Opt-In Plaintiffs will receive a share from both the Class Net Settlement Fund and the FLSA Net Settlement Fund. The remainder of the FLSA Net Settlement Fund that is not distributed to the Opt-In Plaintiffs will be added to the Class Net Settlement Fund and re-distributed to the Class.

[4] The average recoveries for Class Members include the additional amount attributable to unclaimed amount of FLSA Settlement Funds (i.e., FLSA settlement funds allocated to Collective Members that did not opt in). Under the Settlement, the Collective Members that did not opt in do not release FLSA claims, and the funds attributable to them are to be distributed to the Participating Class Members. *See* Settlement Agreement, ¶¶ III.C, III.G.

[5] The Notice and Opt-In period end on September 27, 2021, and Plaintiff will submit an update to the Court prior to the hearing.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 2

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   litigation. It is fair, reasonable, and adequate in all respects. As set forth herein, the Settlement

2   should be finally approved.

## II.   FACTUAL BACKGROUND

4   Plaintiff is a former non-exempt employee of Defendants, who worked as a nurse at Harrison

5   Medical Center in Bremerton, Washington. *See* Pl.'s Compl. (ECF 1), ¶¶ 12, 34. Defendants operate

6   a network of hospitals and clinics that provide healthcare services throughout the State of

7   Washington. *Id.* at ¶ 29. Plaintiff, Opt-In Plaintiffs, and Class Members work for Defendants as

8   hourly-paid, non-exempt employees with direct patient care responsibilities, including nurses,

9   aides, technicians, and the like.[6] *See id.* at ¶¶ 52, 69.

10   Plaintiff alleges that the Class Members were not properly compensated for work performed

11   for Defendants during unpaid meal periods due to Defendants' auto-deduct policy, before clocking

12   in, and after clocking out. *See id.* at ¶¶ 29-51. In particular, Plaintiff alleges that these workers were

13   required to remain on-duty during their unpaid meal breaks in accordance with Defendants'

14   practices, policies, and as a requirement to abide by their patient care-related ethical obligations to

15   their patients. *Id.* Plaintiff also alleges they were required to arrive early for their shifts, but were

16   instructed to remain clocked out while they prepared for their day and were required to clock in

17   only within a few minutes of their scheduled start time. *Id.* Plaintiff further alleges they were

18   required to clock out within a few minutes of their end-of-shift, but were expected to stay late to

19   complete charting and assist other hospital personnel. *Id.* With this litigation, Plaintiff seeks to

20   recover all unpaid wages, compensation, penalties, and other damages owing the Class Members

21   under the FLSA and Washington law.

22   Defendants have at all times denied, and continue to deny, these allegations, and deny any

23   and all liability for Plaintiff's claims. Defendants further deny that Plaintiff's allegations are

24   appropriate for class/collective treatment for any purpose other than for settlement purposes only.

25   Specifically, Defendants argued that Plaintiff's class action complaint would fail for both

26

---

27   [6] Plaintiff, Opt-In Plaintiffs, and Class Members are sometimes referred to as "Class Members" for

28   ease of discussion.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 3

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   substantive and procedural issues. Defendants contended that their auto-deduct policy, as well as

2   their other timekeeping policies, were consistent with applicable law that to the extent there were

3   any violations of the law, they occurred on an "ad hoc" basis and contrary to company policy.

4   Because Defendants claimed the policies were consistent with the law and any violations of the law

5   were done on an ad hoc basis, Defendants did not believe that the claims were susceptible to class

6   certification.

7   **III.   PROCEDURAL HISTORY**

8         Plaintiff filed this lawsuit against Defendants on April 9, 2019, asserting claims under the

9   FLSA and the wage and hour laws of Washington on behalf of a putative FLSA collective and a

10  putative Washington class. *See* ECF 1. Following a motion to dismiss that was denied, Defendants

11  answered the complaint on August 15, 2019, and asserted various affirmative defenses. *See* ECF

12  40-44. The Parties proceeded to litigate formal discovery; each side propounded comprehensive

13  requests and the Parties engaged in extensive meet and confer efforts. Cottrell Decl. at ¶ 13.

14        The Parties attended private mediation on August 27, 2020. *Id*. at ¶ 28. The Action was

15  mediated by Cliff Freed, an experienced and skilled mediator with decades of experience as a

16  neutral in employment litigation. *Id*. As a result of arm's length and good faith negotiations during

17  that settlement conference, and through continued negotiations over the following months with Mr.

18  Freed who continued to serve in his capacity as a mediator, the Parties reached a settlement in

19  principle on or about January 29, 2021. *Id.* at ¶ 29; *see also* ECF 61. Over the course of the next

20  few months, the Parties undertook the process of drafting, revising, and finalizing the settlement

21  agreement terms, distilling and crystalizing those terms into a written settlement agreement, and

22  agreeing on the form and content of a settlement notice/claims form process. *See* Cottrell Decl. at

23  ¶ 30. The final version of the Settlement Agreement was agreed as to form on June 3, 2021. *Id.* at

24  ¶ 31.

25        Plaintiff filed her preliminary approval motion on June 10, 2021. *See* ECF 67. Defendants

26  filed a statement of non-opposition on June 14, 2021, stating that Defendants continue to deny

27  liability but do not oppose the preliminary approval of the Settlement as fair, reasonable, and

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 4

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   adequate. *See* ECF 69. Thereafter, the Court issued its order granting Plaintiff's preliminary

2   approval motion on June 16, 2021. ECF 70.

3       **IV.    NOTICE OF SETTLEMENT, RESPONSE OF CLASS MEMBERS, AND**

4                           **OPT-IN PROCESS**

5           Following the Court's preliminary approval order, the Settlement Administrator, SSI,

6   received the Class and Collective Data from Defendants, which contained the names, last known

7   mailing addresses, last known personal email addresses (to the extent available), social security

8   numbers, and workweeks for the Class Members. Cottrell Decl. at ¶ 32. On July 28, 2021, SSI

9   disseminated the Class and Collective Notice Packets via U.S. Mail and via email to all email

10  addresses provided. *Id*. SSI sent the notice packet by U.S. Mail to some 8,004 recipients, and by

11  email to 4,294 recipients.[7]   *Id*. at ¶ 33. SSI established a case website,

12  www.chifranciscanwagesettlement.com, which provides Settlement documents and information

13  and allows for the submission of electronic FLSA Collective Consent Forms. *Id*. at ¶ 34. SSI also

14  established a toll-free call center and provided an email address to field questions, address updates,

15  and other inquiries from Class Members. *Id.*

16          In order to include such information on the notices, SSI first calculated the individual

17  settlement payments for every Class Member using the workweek data provided by Defendants. *Id*.

18  at ¶ 35. The notices informed the Class Members of: the Settlement terms; their expected share for

19  both the Class allocation and the FLSA allocation; the deadline to submit objections, Requests for

20  Exclusions, FLSA Collective Consent Forms, and disputes; the October 19, 2021 final approval

21  hearing; the names and contact information for Class Counsel and Defendants' Counsel; and that

22  Plaintiff would seek attorneys' fees, costs, and the service award and the corresponding amounts.

23  *Id*.; *see also* ECF 71-1 at pp. 26-36. SSI included the URL for the case website and the toll-free call

24  center number in the notice mailing. *Id*.

25

---

26  [7] Five additional individuals who did not appear on the class list (and therefore were not sent the
    notice) contacted SSI to self-identify as Class Members and request inclusion in the Settlement.
27  SSI and Defendants have approved one request and are awaiting further information from the
    other four individuals.

28

MOTION FOR FINAL APPROVAL OF                      SCHNEIDER WALLACE
CLASS AND COLLECTIVE ACTION SETTLEMENT            COTTRELL KONECKY LLP
(No.: 3:19-cv-05261-RJB-MAT)                      2000 Powell Street, Suite 1400
Page 5                                            Emeryville, CA 94608
                                                  415-421-7100

As of September 8, 2021, 644 hard copy notice packets have been returned to SSI as undeliverable without forwarding address. *Id*. at ¶ 36. SSI performed skip-tracing and other techniques to identify current or new mailing addresses, and approximately 575 notice packets were successfully re-mailed. *Id*. Approximately 69 U.S. Mail notice packets remain undelivered; 72 email notices were undeliverable. *Id*. The deadline for Class Members to opt out, object, and dispute their reported workweeks expires September 27, 2021. *Id.* at ¶ 37. The deadline for Collective Members to opt in also expires September 27, 2021. *Id.* To date, 1,275 Collective Members have opted into the FLSA portion of the Settlement. *Id*.

To date, not a single objection has been filed and just two Class Members out of more than 8,000 have requested exclusion from the Settlement.[8] *Id*. at ¶ 38. Moreover, just five Class Members have disputed the workweek figures reported in their Notices, and five additional individuals have self-identified as Class Members that should be covered under the Settlement. *Id*. Plaintiff will file a declaration from SSI regarding notice administration in advance of the final approval hearing (and following the September 27, 2021 deadline to opt in, request exclusion, and object).

In addition to distributing the Class and Collective Notice Packet, SSI is responsible for calculating individual settlement payments; calculating all applicable payroll taxes, withholdings and deductions; preparing and issuing all disbursements to be paid to Participating Class Members, the Class Representative, Class Counsel, and federal and local tax authorities; and handling inquiries and/or disputes from Class Members. *Id*. at ¶ 41. SSI is also responsible for the timely preparation and filing of tax reporting. *Id*. Following final approval of the Settlement, SSI will issue checks to the Class Members. *Id*. at ¶ 42.

## V.       TERMS OF THE SETTLEMENT

### A.       Basic Terms and Value of the Settlement

CHI Franciscan has agreed to pay a non-reversionary Gross Settlement Amount of $5,500,000 to settle the case. *Id.* at ¶ 43. The Class Net Settlement Fund, which is the amount available to pay settlement awards to the Class Members, is defined as the portion of the Gross

---

[8] The opt-outs are Faith Pearsall and Cheri Evanson. Cottrell Decl. at ¶ 39.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 6

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

Settlement Amount remaining after deduction of the FLSA Net Settlement Fund ($500,000), Settlement Administration Costs to the Settlement Administrator ($72,650), the Class Representative Service Payment (not to exceed $10,000, as determined by the Court), and the Class Counsel award (fees in the amount of one-third of the Gross Settlement Amount and costs in the amount of $11,000, as determined by the Court). *Id.* Opt-In Plaintiffs will receive payment from the $500,000 FLSA Net Settlement Fund for their FLSA claims. *See* Settlement Agreement at ¶¶ III.C.

The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. Class Counsel based their damages analysis and settlement negotiations on both formal and informal discovery, including payroll and timekeeping data, as well as interviews with dozens of Class Members across numerous healthcare facilities owned/operated by Defendants. Cottrell Decl. at ¶ 44. Class Counsel built a comprehensive damage model using the payroll and timekeeping data produced by Defendants, and applied formulas to determine the total potential damages for unpaid time based on a number of different scenarios developed from outreach/interview results (e.g., including probabilities of class/collective certification, probabilities of winning on the merits, and different outlooks based on variations in the class-wide assumptions for average number of minutes worked while off-the-clock). *Id.* at ¶ 45.

Using these formulas and scenarios, Class Counsel assesses the total potential exposure if Plaintiff prevailed on her claims—inclusive of derivative claims, penalty claims, and claims for liquidated damages—at approximately $17,545,000.[9] *Id.* at ¶ 46. The total amount of damages is broken down as follows.

---

[9] The damages analysis figures presented here are updated based on the final tally of Class Members, which increased to approximately 8,005 Class Members upon Defendants' compilation of the finalized Class and Collective Data for settlement administration purposes. Plaintiff previously reported that there were approximately 7,300 Class Members in her preliminary approval papers. The recovery of the overall damages estimate has not changed significantly with the additional Class Members—the percentage recovery of the core unpaid wage claims decreased from 38% to 35% and the percentage recovery of the total exposure decreased from 34.3% to 31.3%.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 7

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1    Plaintiff calculated that unpaid wages owed, based on the assumption for each workday (and

2    inclusive of overtime) of 1.083 hours of unpaid time—comprised of meal break work (0.5 hours),

3    work during rest periods (0.25 hours), pre-shift off-the-clock work (0.1667 hours), and post-shift

4    off-the-clock work (0.1667 hours) for each shift worked—would total approximately $15,726,000

5    in substantive damages (not including penalty and liquidated damages claims) for the

6    approximately 8,000 putative class members. *Id.* at ¶ 47.

7    The negotiated non-reversionary Gross Settlement Amount of $5,500,000 represents

8    approximately 35% of the $15,726,000 that Plaintiff calculated for the core unpaid wages claims.

9    *Id.* at ¶ 48. In total, the $5,500,000 Gross Settlement Amount represents approximately 31.3% of

10   Defendants' total exposure of $17,545,000. *Id.* Again, these figures are based on Plaintiff's

11   assessment of a best-case-scenario. To have obtained such a result at trial, Plaintiff would have had

12   to prove that all of the approximately 8,000 Class Members experienced the violations at the levels

13   described above for every shift and every assignment, and that Defendants acted knowingly or in

14   bad faith. *Id.*

15   Plaintiff and Class Counsel considered the significant risks of continued litigation, described

16   hereinafter, when considering the proposed Settlement. *Id.* at ¶ 49. These risks were front and

17   center, particularly given the nature of the off-the-clock work, which would be challenging to

18   certify as a class action and/or to prove the claims on the merits. *Id.* In contrast, the Settlement will

19   result in immediate and certain payment to the Class Members and Opt-In Plaintiffs of meaningful

20   amounts, representing approximately 35% of their core claims for unpaid wages. The average net

21   recovery will be approximately $432.42 per Class Member and $87.43 per Opt-In Plaintiff. *Id.* at ¶

22   50. Because this is a non-reversionary settlement, any settlement amounts that are unclaimed by the

23   Class Members will be re-distributed on a pro rata basis to increase the Class Members' individual

24   recoveries, unless the total amount of unclaimed funds is less than $50,000 in which case those

25   unclaimed funds will be distributed to the *cy pres* beneficiary. *See infra* at Sec. V.C. These amounts

26   provide significant compensation and the Settlement provides an excellent recovery in the face of

27

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 8

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   expansive and uncertain litigation. In light of all the risks, the settlement amount is fair, reasonable,

2   and adequate. *Id.*

3   **B.      Class and Collective Definitions**

4         Participating Class Members and Opt-In Plaintiffs will share in the Settlement. As the FLSA

5   Collective consists entirely of individuals that worked in Washington, all Opt-In Plaintiffs are also

6   Class Members. To the extent an individual is both a Participating Class Member and an Opt-In

7   Plaintiff, he or she will receive a settlement allocation from both the Class component and the FLSA

8   component of the Settlement.

9         The Class Members are comprised of approximately 8,000 current and former non-exempt

10  workers with direct patient care responsibilities, including registered nurses, licensed practical

11  nurses, certified nursing assistants, technicians, and other patient care workers, who worked for a

12  facility owned/operated by CHI Franciscan in Washington at any time from April 9, 2015 through

13  June 16, 2021, and were subjected to an automated 30-minute meal period deduction policy. *See*

14  Settlement Agreement at ¶ I.B.

15        The "FLSA Collective" means all current and former non-exempt workers who worked in

16  the above job classifications in Washington at any time from April 9, 2016 through June 16, 2021

17  and were subjected to an automated 30-minute meal period deduction policy. *See* Settlement

18  Agreement at ¶ I.R. Members of the FLSA Collective could submit FLSA Collective Consent

19  Forms to become Opt-In Plaintiffs. Settlement Agreement at ¶ III.F.3. To date, 1,275 individuals

20  have submitted Consent Forms and will share in the FLSA component of the Settlement. Cottrell

21  Decl. at ¶ 53.

22        **C.      Allocation and Awards**

23        The Class Net Settlement Fund is approximately $3,461,540.37, assuming that the Court

24  approves the fees, costs, and service award as requested. *See* Cottrell Decl. at ¶ 54. This fund will

25  be used to pay the individual awards to Participating Class Members. The FLSA Net Settlement

26  Fund is set not to exceed $500,000, of which any unused portion will be added to the Class Net

27

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 9

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   Settlement Fund and thereby redistributed to the Participating Class Members.[10] *Id.* Each

2   individual's share of the Class Net Settlement Fund and the FLSA Net Settlement Fund (if the

3   individual is also an Opt-In Plaintiff) will be determined *pro rata* based on the total number of

4   workweeks. *Id.* at ¶ 56.

5       Any checks remaining uncashed after 180 calendar days after being issued shall be void.

6   Settlement Agreement at ¶ III.F.11. The Settlement Administrator will make all reasonable efforts

7   to remail checks returned within 120 days after issuance, and will send a reminder notice to all

8   individuals whose checks are not cashed at the 120 day mark. *Id*. If the amount of uncashed

9   Settlement checks exceeds $50,000, then the funds from those checks will be redistributed *pro rata*

10  to those Participating Class Members who timely cash their checks. *Id.* at ¶ III.F.12. If the amount

11  of uncashed Settlement checks is less than $50,000, or if there are uncashed check funds after the

12  redistribution, then the funds from those checks will be distributed *cy pres* equally between Pierce

13  County Catholic Community Services and the Legal Foundation of Washington.[11] *Id*

14              **D.    Scope of Release and Final Judgment**

15      The releases contemplated by the proposed Settlement are dependent upon whether the Class

16  member is a Rule 23-only participant, or whether the Class Member has also filed a written consent

17  to become an Opt-In Plaintiff. The Rule 23 Class members will release any and all claims under

18  applicable Washington state law, based on or arising out of the same factual predicates of the

19  Action, including all claims that were or could have been raised in the Action and any other wage

20  and hour claims for damages, premiums, penalties, interest, attorneys' fees, and equitable relief, but

21  will not release their potential FLSA claims. *Id.* at ¶ III.G.1-3. Opt-In Plaintiffs will release any and

22

23  _____

    [10]  The Class Net Settlement Fund of approximately $3,461,540.37 includes approximately
    $388,523.70 in unclaimed funds from the FLSA Net Settlement Fund. Cottrell Decl. at ¶ 55.

24  [11]  Pierce County Catholic Community Services ("CCS") is a nonprofit organization committed to
25  serving individuals, children, families and communities struggling with poverty and the effects of
    intolerance and racism. CCS serves people in need, regardless of religious affiliation, race or
26  economic status. The Legal Foundation of Washington ("LFW") is a nonprofit organization created
    in 1984 at the direction of the Washington Supreme Court to distribute IOLTA funds to legal aid
27  organizations across the state. LFW serves the low-income population by investing in civil legal
    aid organizations across Washington.
28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  10

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1  all claims under the FLSA based on or arising out of the same factual predicates of the Action, in

2  addition to the state law wage and hour claims that could have been brought on the factual

3  allegations in the Complaint. *See* Settlement Agreement at ¶ III.G.

4      The releases are effective upon the Effective Date of the Settlement. *Id.* at ¶ III.G. The release

5  timing extends through the date of preliminary approval of the Settlement. *Id.* at ¶ I.J. Named

6  Plaintiff Etcheverry also agrees to a general release. *Id.* at ¶ III.G.3.

7  ## VI.   ARGUMENT

8  ### A.   Ninth Circuit Precedent Favors and Encourages Class Settlements

9      A certified class action may not be settled without Court approval. *See* Fed. R. Civ. P. 23(e).

10  Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

11  settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

12  and (3) a final settlement approval hearing at which objecting class members may be heard, and at

13  which evidence and argument concerning the fairness, adequacy, and reasonableness of the

14  settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed*

15  *Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed

16  settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150

17  F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two

18  primary prerequisites before a court may grant certification for purposes of preliminary approval:

19  (1) that the settlement class meets the requirements for class certification if it has not yet been

20  certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2);

21  *Hanlon*, 150 F.3d at 1020.

22      In the FLSA context, court approval is required for FLSA collective settlements, but the

23  Ninth Circuit has not established the criteria that a district court must consider in determining

24  whether an FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n*

25  *of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v.*

26  *CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

27  Most courts in this Circuit, however, evaluate the settlement under the standard established by the

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 11

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at \*4; *Grewe v. Cobalt Mortg., Inc.*, No. C16-0577-JCC, 2016 WL 4014114, 2016 U.S. Dist. LEXIS 98224, at \*1 (W.D. Wash. July 27, 2016)

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Applying this standard of review to other federal and state-law wage and hour class actions, federal courts in the Ninth Circuit routinely approve class and collective settlements similar to that reached in this case. *See, e.g., Amaraut v. Sprint/United Mgmt. Co.*, No. 19-cv-411-WQH-AHG, 2021 WL 3419232, 2021 U.S. Dist. LEXIS 147176, at \*2 (S.D. Cal. Aug. 5, 2021) (granting final approval of a settlement that included both FLSA and Washington law claims); *Jones, et al. v. CertifiedSafety, Inc*, Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (same); *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299, 305 (N.D. Cal. Oct. 23, 2019) (same).[12] Likewise, in its June 16, 2021 order, the Court already granted preliminary approval. *See* ECF 70. This Court also conditionally certified the Class for settlement

---

[12] *See also O'Connor v. Uber Techs., Inc*., No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070, at \*12 (N.D. Cal. Sep. 13, 2019) (granting final approval of a settlement that included both FLSA and California Labor Code claims); *Viceral v. Mistras Grp., Inc*., No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at \*2 (N.D. Cal. Feb. 17, 2017) (same); *Guilbaud v. Sprint Nextel Corp*., No. 3:13-CV-04357-VC, 2016 WL 7826649, at \*1 (N.D. Cal. Apr. 15, 2016) (same); *Clifton v. Babb Constr. Co*., No. 6:13-cv-1003 MC, 2014 WL 5018897, 2014 U.S. Dist. LEXIS 140951, at \*1 (D. Or. Oct. 1, 2014) (granting final approval of a settlement that included both FLSA and Oregon law claims).

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 12

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1  purposes. *Id.* Accordingly, the only step that remains is final approval of the Settlement, which

2  should be granted pursuant to Ninth Circuit case law and numerous decisions of federal district

3  courts.

**B.      The Best Practicable Notice Was Provided to the Class Members**

5         Pursuant to the Court's June 16, 2021 preliminary approval order, SSI sent the Court-

6  approved Class and Collective Notice Packet to the Class Members in accordance with the terms

7  of the Settlement. Cottrell Decl. at ¶¶ 33-34. The Notices were sent via U.S. Mail and email, and

8  SSI established a case website where Class Members can view the Settlement and accompanying

9  court filings and submit opt-in forms. *Id.* The notice process was robust, with over 8,000 notices

10  sent via U.S. Mail and 4,294 notices sent via email. *Id.*

11        Notice of a class action settlement is adequate where the notice is given in a "form and

12  manner that does not systematically leave an identifiable group without notice." *Mandujano v.*

13  *Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best

14  "practicable under the circumstances including individual notice to all members who can be

15  identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th

16  Cir. 1993). Sending individual notices to settlement class members' last-known addresses

17  constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir.

18  1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail

19  has been approved repeatedly as sufficient notice of a proposed settlement.").

20        The Settlement Administrator followed all of the procedures set forth in the Court-approved

21  notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice.

22  Ultimately, of the 8,004 notices distributed via U.S. Mail, just 69 notices (0.86%) remained

23  undeliverable[13] following skip-tracing and other techniques to verify current mailing addresses.

24  Cottrell Decl. at ¶ 36. Moreover, the dissemination of notice via email increased the likelihood that

25  Class Members successfully received the notice. *Id.* The notices provided reasonable estimates of

26  Class Members' recovery, in addition to considerable information about the case and the

27  _____

[13] Out of the 69 returned undeliverable notices with no trace address, 18 received a notice via email.

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  13

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   Settlement. Accordingly, the notice process was effective and satisfies the "best practicable notice"

2   standard.

3                                    **C.       The Settlement Readily Warrants Final Approval**

4           In deciding whether to approve a proposed class action settlement, the Court must find that

5   the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for*

6   *Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the

7   plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

8   risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5)

9   the extent of discovery completed and the stage of the proceedings; (6) the experience and views

10  of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members

11  to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

12          Importantly, courts apply a presumption of fairness if, as is the case here, "the settlement is

13  recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*,

14  No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong

15  judicial policy that favors settlements, particularly where complex class action litigation is

16  concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors,

17  the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as

18  to the Class and Opt-In Plaintiffs.

19                         **1.       The Settlement is entitled to a presumption of fairness**

20                    **because it is the product of informed, non-collusive, and arm's-length negotiations**

21          Courts routinely presume a settlement is fair where it is reached through arm's-length

22  bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. This Settlement was

23  a product of non-collusive, arm's-length negotiations. *See* Cottrell Decl. at ¶ 57. The Parties

24  participated in mediation with Cliff Freed, who is a skilled and experienced mediator, that consisted

25  of a lengthy session that lasted well into the night. *Id*. The Parties then spent several months

26  continuing settlement negotiations, negotiating the material terms of the Settlement, and even more

27  months negotiating the long form Settlement Agreement, with several rounds of revisions and

28

1   proposals related to the terms and details of the Settlement. *Id*. at ¶ 58. Plaintiff is represented by

2   experienced and respected litigators of representative wage and hour actions, and these attorneys

3   feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id*.

4   at ¶ 59.

5                          **2.      The Class Members overwhelmingly support the Settlement**

6          The Ninth Circuit and other federal courts make clear that the number or percentage of class

7   members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*,

8   541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425

9   (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the

10  most significant factor to be weighed in considering its adequacy."). Courts have found that a

11  relatively low percentage of objectors or opt outs is a very strong indicator of fairness that factors

12  heavily in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000)

13  (approving the settlement in large part because only 3% of the apparent class had objected to the

14  settlement).

15         To date, with the notice period close to completion, no Class Members have objected to the

16  Settlement, and only two Class Members opted out. *See* Cottrell Decl. at ¶ 38. Indeed, only five

17  workweek disputes have been submitted. *Id*. In addition, Plaintiff approves of the terms of the

18  Settlement. *Id.* at ¶ 60; *see also* Declaration of Hana Etcheverry. Taken together, there is widespread

19  support for the Settlement among Class Members. This factor weighs heavily in favor of final

20  approval.

21                          **3.      The strengths of Plaintiff's case**

22         Plaintiff contends that she has strong wage and hour claims that are chiefly rooted in a

23  centralized "auto-deduct" policy for deduction of meal period time. The existence of the common,

24  underlying auto-deduct policy, among other common policies and practices, strengthens Plaintiff's

25  case at both the certification and merits phases. Moreover, the Class Members all worked in the

26  patient care setting, leading to constraints and pressures that drive the off-the-clock work in a

27  manner that is universal across the Class. Outreach performed by Class Counsel confirms that the

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 15

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   Class Members routinely experienced regular unpaid work during meal and rest periods, among

2   other unpaid time. Cottrell Decl. at ¶ 61. Plaintiff continues to believe she has a very strong case

3   but is also pragmatic in her awareness of the risks inherent in this litigation, particularly where there

4   are thousands of Class Members that worked in different roles, under differing supervisors, at

5   numerous different locations. *Id*. at ¶ 62.

6   ### 4.    The Action involves significant risk

7   ### and the possibility of extensive further litigation

8   While Plaintiff is confident in the strength of her case, recovery of the damages and penalties

9   previously referenced would require overcoming procedural and substantive challenges, such as

10  class certification and ultimate success on the merits as to all of Plaintiff's claims across the entire

11  Class. This is a questionable feat in light of developments in wage and hour and class and collective

12  action law as well as the legal and factual grounds that Defendants have asserted to defend this

13  action. *Id*. at ¶ 63. Off-the-clock claims are difficult to certify for class treatment, given that the

14  nature, cause, and amount of the off-the-clock work may vary based on the individualized

15  circumstances of the worker. *See, e.g., Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-

16  06741-LB, 2020 U.S. Dist. LEXIS 218152, at *15 (N.D. Cal. Nov. 20, 2020) (citing *In re AutoZone,*

17  *Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No.

18  17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019)); *Kilbourne v. Coca-Cola Co*., No. 14CV984-

19  MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp*., No. CV

20  08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

21  While Plaintiff is confident that she would establish that common policies and practices give

22  rise to the off-the-clock work for the patient care staff at issue here, Plaintiff acknowledges that

23  such off-the-clock work was performed at scores of different hospitals and clinics, and at various

24  different departments within those hospitals and clinics, each with its own supervisors and

25  management staff. *See* Cottrell Decl. at ¶ 65. With those considerations in mind, Plaintiff recognizes

26  that obtaining class certification would present an obstacle, with the risk that the nursing staff might

27  only be able pursue individual actions in the event that certification were denied. *Id*. at ¶ 66.

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 16

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   Certification of off-the-clock work claims is complicated by the lack of documentary evidence and

2   reliance on employee testimony, and Plaintiff would likely face motions for decertification as the

3   case progressed. *Id*.

4       The monetary value of the proposed Settlement represents a fair compromise given the risks

5   and uncertainties posed by continued litigation. *Id*. at ¶ 67. If the Action were to go to trial as a

6   class and collective action (which Defendants would vigorously oppose if this Settlement

7   Agreement were not approved), Class Counsel estimates that fees and costs would exceed

8   $5,000,000. *Id*. at ¶ 68. Litigating the class and collective action claims would require substantial

9   additional preparation and discovery. *Id*. It would require depositions of experts, the presentation

10   of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation

11   of voluminous documentary evidence and the preparation and analysis of expert reports. *Id*.

12       In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

13   prompt, certain, and very substantial recovery for the Class Members. *Id*. at ¶ 69. Such a result will

14   benefit the Parties and the court system. *Id*. It will bring finality to extensive litigation and will

15   foreclose the possibility of expanding litigation.

16              **5.**      **The amount of the settlement favors approval**

17       In evaluating the fairness of a proposed settlement, courts compare the settlement amount

18   with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp.*

19   *Sec. Litig*., 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a

20   fraction of the maximum potential recovery. *See, e.g., See, e.g., Rodriguez v. W. Publ'g Corp.*, 563

21   F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30 percent of the damages

22   estimated by the class expert; court noted that even if the plaintiffs were entitled to treble damages

23   that settlement would be approximately 10 percent of the estimated damages); *Officers for Justice*,

24   688 F.2d at 623; *Viceral v. Mistras Grp., Inc*., Case No. 15-cv-2198-EMC, 2016 WL 5907869, at

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  17

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

*7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value).[14]

A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms. *See* Cottrell Decl. at ¶ 70. The Gross Settlement Amount of $5,500,000 represents approximately 35% of the $15,726,000 that Plaintiff calculated in substantive damages for unpaid wages the Class Members, assuming a 100% violation rate across the Class. *Id*. When adding other substantive claims and potential penalties, the $5,500,000 settlement amount represents approximately 31.3% of Defendants' updated total estimated potential exposure (including penalties and liquidated damages) of $17,545,000. *Id*.

Again, these estimated figures are based on Plaintiff's assessment of a best-case-scenario. To have obtained such a result at trial(s), Plaintiff would have had to prove that each of the Class Members worked off-the-clock for 1.083 hours in each workday and that Defendants acted knowingly or in bad faith. *Id*. at ¶ 71. These figures would of course be disputed and hotly contested. *Id*. The result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id*.

### 6.   Wide-ranging formal and informal discovery has been completed

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Boyd v. Bechtel Corp*., 485 F. Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp*., No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores*, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013).

---

[14] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 18

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1    The Parties engaged in extensive formal, informal discovery, and class outreach that have

2    enabled both sides to assess the claims and potential defenses in this action. *See* Cottrell Decl. at ¶

3    73. Defendant produced thousands of pages of documents, as well as timekeeping and pay data for

4    a 20% sample of the Class. *Id*. at ¶ 24. Defendant also produced class list information, which

5    allowed Class Counsel to conduct dozens of outreach interviews. *Id*. at ¶ 25. Class Counsel used

6    this information to perform an extensive analysis of the case, including a comprehensive damages

7    analysis. *Id*. at ¶ 73. The Parties were able to accurately assess the legal and factual issues that

8    would arise if the case proceeded to trial. *Id*.

9                    **7.    Class Counsel are highly experienced**

10   Where counsel is well-qualified to represent the class and collective in settlement

11   negotiations, based on their extensive class action experience and familiarity with the strengths and

12   weaknesses of the case, courts find this factor to support a finding of fairness. *Wren*, 2011 WL

13   1230826, at \*10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010

14   WL 1946784, at \*8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable

15   weight.").

16   In reaching this Settlement, Plaintiff's counsel relied on their substantial litigation experience

17   in similar wage and hour class and collective actions. *Id*. at ¶¶ 5-7, 74; Declaration of Beth Terrell

18   at ¶¶ 1-6. Class Counsel used their skill and expertise in performing liability and damages

19   evaluations that were premised on a careful and extensive analysis of the effects of Defendants'

20   compensation policies and practices on Class Members' pay. *Id.* at ¶ 74. Ultimately, facilitated by

21   the mediator, the Parties used this information and discovery to fairly resolve the litigation for

22   $5,500,000. *Id.* at ¶ 75. Class Counsel believe that Plaintiff has achieved a strong settlement in light

23   of all the risks. *Id.*

24          **D.    The Class Representative Service Payment and Requested**

25                 **Attorneys' Fees and Costs are Reasonable**

26   In approving the Settlement, the Court must determine whether "the settlement, taken as a

27   whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 19

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   addition to the terms and details of the Settlement discussed above, the Settlement also establishes

2   a Class Representative Service Payment of up to $10,000 for Plaintiff. Likewise in evaluating the

3   Settlement, the Court must evaluate Plaintiff's request for attorneys' fees and costs pursuant to the

4   terms of the Settlement. In their fee motion, Class counsel request one-third of the Gross Settlement

5   Amount, or $1,833,333, plus reimbursement of costs in the amount of $11,000.

6        Plaintiff sets forth the arguments in support of the service award, the attorneys' fees, and

7   costs request in full in the accompanying Motion for Approval of Attorneys' Fees and Costs and

8   Service Award, including that no objections to the service award, fees, or costs have been received

9   from the Class and Collective members. Plaintiff does not repeat those arguments here. The Court

10  should grant final approval to the requested service award, as well as the requested fees and costs,

11  as reasonable.

12                    **E.     The Court Should Finally Certify the Class**

13       In its June 16, 2021 preliminary approval order, the Court granted certification of the

14  provisional Washington Class. *See* ECF 70. Now that notice has been effectuated, the Court should

15  finally certify the Class in its Final Approval Order and Judgment. The Class meets all of the

16  requirements for final approval as set forth below.

17                    **1.     The Class is numerous and ascertainable**

18       The numerosity prerequisite demands that a class be large enough that joinder of all members

19  would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts

20  have routinely found numerosity satisfied with classes of at least 40 members. *See, e.g., Ikonen v.*

21  *Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods,*

22  *Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Here, there are approximately 8,000 Class members,

23  who have been identified and issued notice, easily satisfying numerosity and ascertainability. *See*

24  Cottrell Decl. at ¶ 77.

25                    **2.     Plaintiff's claims raise common issues of fact and law**

26       The commonality requirement of Rule 23(a)(2) "is met if there is at least one common

27  question of law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  20

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*.

Plaintiff contends that common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. *See* Cottrell Decl. at ¶ 78. Defendants have uniform policies applicable to the Class Members. *Id*. at ¶ 79. Specifically, Plaintiff alleges that the Class Members all perform the same primary job duties—providing direct patient care services. Plaintiff alleges the wage and hour violations are in large measure borne of Defendants' standardized policies, practices, and procedures that impact these direct patient care workers in the same ways, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular, Class Members are largely subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; and meal and rest period policies and practices (and in particular, the auto-deduct policy). *Id*. Because these questions can be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for the Class. *Id*.

### 3.    Plaintiff's claims are typical of the claims of the Class

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff contends that her claims are typical of those of all other Class Members. *See* Cottrell Decl. at ¶ 80. The Class Members were subject to the alleged illegal policies and practices that form the basis of the claims asserted by Plaintiff in this case. *Id*. Interviews with Class Members and review of timekeeping and payroll data confirm that these non-exempt patient care employees were subjected to the same alleged illegal policies and practices to which Plaintiff alleges she was subjected. *Id*. Thus, Plaintiff contends the typicality requirement is also satisfied. *Id*.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  21

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1

### 4.     Plaintiff and Class Counsel will adequately represent the Class

2      To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show

3  "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the

4  class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict

5  between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

6  Plaintiff's claims are in line with the claims of the Class, and Plaintiff's claims are not antagonistic

7  to the claims of Class Members. *See* Cottrell Decl. at ¶ 81. Plaintiff has prosecuted this case with

8  the interests of the Class Members in mind. *Id*. Moreover, Class Counsel has extensive experience

9  in class action and employment litigation, including wage and hour class actions, and does not have

10 any conflict with the Class. *Id*. at ¶¶ 5-7, 81.

11

### 5.     The Rule 23(b)(3) requirements for class certification are also met

12     Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over

13 any questions affecting only individual members" and that a class action is "superior to other

14 available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

15 "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common

16 and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to

17 warrant adjudication by representation.'" *Wang*, 737 F.3d at 545.

18     Here, Plaintiff contends the common questions raised in this action predominate over any

19 individualized questions concerning the Class. *See* Cottrell Decl. at ¶ 83. The Class is entirely

20 cohesive because resolution of Plaintiff's claims hinge on the uniform policies and practices of

21 Defendants, rather than the treatment the Class Members experienced on an individual level. *Id*. As

22 a result, Plaintiff contends the resolution of these alleged class claims would be achieved through

23 the use of common forms of proof, such as Defendants' uniform policies, and would not require

24 inquiries specific to individual Class Members. *Id*.

25     Further, Plaintiff contends the class action mechanism is a superior method of adjudication

26 compared to a multitude of individual suits. *Id.* at ¶ 84. To determine whether the class approach is

27 superior, courts are to consider: (A) the class members' interests in individually controlling the

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  22

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1   prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

2   the controversy already begun by or against class members; (C) the desirability or undesirability of

3   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

4   managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

5       Here, the Class Members do not have a strong interest in controlling their individual claims.

6   *See* Cottrell Decl. at ¶ 85. The Action involves thousands of workers with very similar, but relatively

7   small, claims for monetary injury. *Id*. If the Class Members proceeded on their claims as

8   individuals, their many individual suits would require duplicative discovery and duplicative

9   litigation, and each Class Member would have to personally participate in the litigation effort to an

10  extent that would never be required in a class proceeding. *Id*. Thus, Plaintiff contends the class

11  action mechanism would efficiently resolve numerous substantially identical claims at the same

12  time while avoiding a waste of judicial resources and eliminating the possibility of conflicting

13  decisions from repetitious litigation. *Id*. at ¶ 86.

14      The issues raised by the present case are much better handled collectively by way of a

15  settlement. *Id*. at ¶ 87. Manageability is not a concern in the settlement context. *Amchem Prod., Inc.*

16  *v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality,

17  ensures that workers receive substantial redress for their claims, and avoids clogging the legal

18  system with numerous cases. *See* Cottrell Decl. at ¶ 88. Accordingly, class treatment is efficient

19  and warranted, and the Court should certify the Class for settlement purposes.

20      **VII.   THE COURT SHOULD APPROVE THE PROPOSED SCHEDULE**

21      Lastly, Plaintiff respectfully requests that the Court approve the following implementation

22  schedule under the Settlement.

23

| Effective Date | The date by which the Agreement is approved by the Court, and latest of: (i) if no objection to the Settlement is made, or if an objection to the Settlement is made and Judgment is entered but no appeal is filed, the last date on which a notice of appeal from the Judgment may be filed and none is filed; or (ii) if Judgment has been entered and a timely appeal from the Judgment is |
|---|---|

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  23

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

| | filed, the date the Judgment is affirmed and is no longer subject to appeal. |
|---|---|
| Deadline for Defendants to pay the Gross Settlement Amount into the Qualified Settlement Account | Within 15 business days after Effective Date |
| Deadline for Defendants to deposit the amount of employer-side payroll taxes | Within 15 business days after Effective Date |
| Deadline for Settlement Services Inc.to make payments under the Settlement to Participating Class Members, Opt-In Plaintiffs, Plaintiff, Class Counsel, and itself | Within 15 days after Defendants fund the Gross Settlement Amount |
| Deadline for SSI to send a reminder notice to Participating Class Members that have not cashed their Settlement Share checks | 120 days after issuance |
| Check-cashing deadline | 180 days after issuance |
| Deadline for SSI to redistribute funds from uncashed Settlement Share checks to those Class Members and Opt-In Plaintiffs who cashed their Settlement Share checks or to the *cy pres* recipients, as applicable | As soon as practicable after check-cashing deadline |
| Deadline for SSI to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable after completion of the redistribution of uncashed Settlement Share check funds and/or the tender such funds to *cy pres* |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement and enter the accompanying proposed Final Approval Order and Judgment.

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page  24

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1

Dated: September 14, 2021

Respectfully submitted,

2

3

By: /s/ Carolyn H. Cottrell
Carolyn Hunt Cottrell, *Admitted Pro Hac Vice*
Email: ccottrell@schneiderwallace.com

4

Ori Edelstein. *Admitted Pro Hac Vice*
Email: oedelstein@schneiderwallace.com

5

William M. Hogg, *Admitted Pro Hac Vice*
Email: whogg@schneiderwallace.com

6

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

7

2000 Powell Street, Suite 1400

8

Emeryville, California 94608
Telephone: (415) 421-7100

9

Facsimile: (415) 421-7105

10

Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com

11

Toby J. Marshall, WSBA #32723

12

Email: tmarshall@terrellmarshall.com
**TERRELL MARSHALL LAW GROUP PLLC**

13

936 North 34th Street, Suite 300

14

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

15

Facsimile: (206) 319-5450

16

*Attorney for Plaintiff and the Settlement Class and Collective*

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT
(No.: 3:19-cv-05261-RJB-MAT)
Page 25

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100

1

## **CERTIFICATE OF SERVICE**

2

    I hereby certify that on September 14, 2021, a true and accurate copy of the foregoing was

3

electronically filed with the Clerk of Court using the CM/ECF system, which will automatically

4

send email notification of such filing to all counsel of record.

5

6

                            */s/  Carolyn H. Cottrell*
                            Carolyn H. Cottrell

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28